Cv-05 3982

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

ISLAND SWIMMING SALES, INC.,

    Plaintiff,

    v.

FLEXIBLE SOLUTIONS
    INTERNATIONAL, INC.,

    Defendant.

(S.I.)

No. _____ ★ AUG 1 9 2005 ★

**LONG ISLAND OFFICE**

**SPATT, J.**

**BOYLE, M.**

### COMPLAINT FOR
### DECLARATORY JUDGMENT OF PATENT
### NON-INFRINGEMENT AND INVALIDITY

Plaintiff Island Swimming Sales, Inc. ("ISS"), by counsel, for its Complaint against Defendant Flexible Solutions International, Inc. ("FSI") avers and states as follows:

### THE PARTIES

1. Plaintiff ISS is a New York Corporation with a place of business at 1075 Hicksville Road, Massapequa, New York 11758.

2. Defendant FSI is a Nevada Corporation headquartered in Canada at 2614 Queenswood Dr., Victoria BC V8N 1X5 and having, on information and belief, manufacturing facilities in Peru, Illinois. Defendant FSI has listed with the Nevada Secretary of State a Corporation Trust Company of Nevada having an address of 6100 Neil Road, Suite 500, Reno, Nevada 89511 as its resident agent.

1

## JURISDICTION AND VENUE

3. Jurisdiction and venue in and of this Court pursuant are based upon the Patent Laws of the United States and upon the Declaratory Judgment Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

## THE '690 PATENT

4. FSI has held itself out as the owner of U.S. Patent No. 6,065,690 ("the '690 patent"), issued May 23, 2000, entitled "Tension Actuated Submerged Liquid Dispenser."

## FSI'S ACCUSATIONS OF INFRINGEMENT

5. FSI sent a Notice to Cease and Desist dated August 12, 2005 alleging infringement by ISS of various claims of the '690 patent in regard to an alleged use, offers for sale, sale, marketing and advertising of a "Liquid Solar Blanket" product. A copy of the letter is appended herein as Exhibit 1.

6. The accusations made by FSI have put ISS in reasonable apprehension of suit, have irreparably harmed ISS, have jeopardized the continued lawful sales by ISS of the accused product, and threaten to interfere with the ability of ISS to conduct an effective and lawful marketing program in competition with FSI.

7. The accusations made by FSI have thus given rise to an actual case and controversy within the jurisdiction of this Court relating to the alleged infringement, enforceability, validity and scope of the '690 patent.

8. Unless FSI is enjoined from doing so, it will continue to bring charges of infringement and acts of enforcement or suit based on the '690 patent against ISS, those in privity with ISS, including manufacturers, suppliers, customers and/or

licensees of ISS, as well as prospective manufacturers, suppliers, customers and licensees.

## RELEVANT FACTUAL BACKGROUND

9. Neither ISS nor any of manufacturer, supplier, customer and/or licensee of ISS has infringed, is not now infringing, has not contributorily infringed, and has not induced others to infringe the '690 patent.

10. The '690 patent is invalid and is not infringed by ISS.

### FIRST CLAIM OF RELIEF
(NON-INFRINGEMENT)

11. ISS repeats and realleges each and every allegation in paragraphs 1-10, as if set forth fully herein.

12. ISS has not literally infringed any valid and enforceable claim of the '690 patent.

13. ISS has not infringed any valid and enforceable claim of the '690 patent under the doctrine of equivalents.

### SECOND CLAIM OF RELIEF
(INVALIDITY)

14. ISS repeats and realleges each and every allegation in paragraphs 1-13, as if set forth fully herein.

15. By and for reasons of the foregoing, the '690 patent, and all claims thereof, are invalid under 35 U.S.C. §§102, 103 and/or 112.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff Island Swimming Sales, Inc. ("ISS") prays that:

A.      This Court declare and decree that United States Patent No. 6,065,690 and the claims thereof to be invalid and unenforceable;

3

B.      This Court declare and decree that the claims of United States Patent No. 6,065,690 are not and have not at any time or place been infringed by ISS or by any manufacturer, supplier, customer or licensee of ISS;

C.      This Court declare and decree that Defendant Flexible Solutions International, Inc. ("FSI") is permanently enjoined from initiating or continuing infringement litigation and from threatening ISS or any of its past, present or future directors, owners, officers, customers, manufacturers, suppliers, dealers, agents, servants, employees, customers, sellers, or users of products of ISS in regard to alleged infringement of United States Patent No. 6,065,690;

D.      This case be deemed exceptional pursuant to 35 U.S.C. § 285 and that all costs and expenses of this action, including reasonable attorneys' fees, be awarded to ISS; and

E.      Judgment be entered in favor of ISS for such other and further relief as this Court may deem proper.

Respectfully submitted,
**DILWORTH & BARRESE, LLP**

Dated: August 19, 2005

By:     Rocco S. Barrese (RB-7064)
        John F. Gallagher III (JG-3174)
        333 Earle Ovington Boulevard
        Uniondale, NY 11553
        Phone: (516) 228-8484
        Fax: (516) 228-8516
        Counsel for Plaintiff,
        ISLAND SWIMMING SALES, INC.

4

Exhibit 1

**SWANSON, MARTIN & BELL, LLP**
**One IBM Plaza**
**330 N. Wabash, Suite 3300**
**Chicago, Illinois 60611**
**(312) 321-9100**
**FAX: (312) 321-0990**

## TELECOPY TRANSMISSION

DATE: August 12, 2005                    TOTAL NO. OF PAGES: _12_
                                         (including this cover page)

SENDING TO:          Island Swimming Sales, Inc.
                     d/b/a Island Recreational
                     Mr. Jonathan Bonelli

FAX NO.:             (516) 735-8105

FROM:                Alain Villeneuve

OUR CLIENT NO.:      3017-007

If you do not receive all pages, call Robert Holland at (312) 222-8559.

**ADDITIONAL INSTRUCTIONS:**

This facsimile is intended only for the use of the addressee named herein and may contain legally privileged and confidential information. If you are not the intended recipient of this facsimile, you are hereby notified that any dissemination, distribution, or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone (312) 321-9100 (if long distance please call collect) and return the original facsimile to the sender's attention at the above address vic the United States Postal Service.

# SWANSON, MARTIN & BELL, LLP

ATTORNEYS AT LAW
ONE IBM PLAZA • SUITE 3300
330 NORTH WABASH • CHICAGO, ILLINOIS 60611
(312) 321-9100 • FAX (312) 321-0990

**Alain Villeneuve**
(312) 222-8557

E-mail at
avilleneuve@smbtrials.com

August 12, 2005

## Via Facsimile: (516) 735-8105 and U.S. Mail

Island Swimming Sales, Inc.
d/b/a Island Recreational
Mr. Jonathan Bonelli
1075 Hicksville Road
Massapequa, NY 11758

    **Re:**   **Notice to Cease & Desist**

Dear Mr. Bonelli:

    We are legal counsel to Flexible Solutions International, Inc. and Flexible Solutions, LTD. ("FSI"). FSI is the exclusive manufacturer of ECOSAVR™, a thermal blanket fish for pools, spas, and other controlled temperature bodies of water. FSI is the owner of United States Patent no. 6,065,690 (*see* Exhibit A).

    Our investigation reveals that a product known as LIQUID SOLAR BLANKET is being used, offered for sale, sold, marketed, and advertised by Leisure Living and that your corporation is the supplier of this product to this retailer. This product infringes on ECOSAVR™. Specifically, the infringing product literally infringes claims 1, 3 and 6 of FSI's patent. As you may know, federal patent law provides that *"whoever without authority makes, uses, offers to sell, or sells any patented invention, within the Unites States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent."* 35 U.S.C. §271(a). Congress grants patent holders a broad range of remedies including lost sales, reasonable royalties, increased damages, injunctions, and even attorney's fess if willful infringement is found.

    In addition, FSI is the owner of the common mark TROPICAL FISH LIQUID SOLAR BLANKET®. This mark is registered with the United States Patent and Trademark Office and is currently the subject of a cancellation proceeding. The Federal Lanham Act provides:

Island Swimming Sales, Inc.
d/b/a Island Recreational
Mr. Jonathan Bonelli
August 12, 2005
Page 2

> "*Any person who shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.*" 15 U.S.C. §1114(1).

> (....)

> "*... a counterfeit of a mark that is registered on the principal register in the USPTO for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered ....*" 15 U.S.C §1116(d)(1)(B)(i).

Moreover, FSI owns the Berne Convention copyright over the text displayed on the back of ECOSAVR™. The sale and distribution of the LIQUID SOLAR BLANKET constitutes copyright infringement under 17 U.S.C. §501.

Finally, LIQUID SOLAR BLANKET is substantially equivalent to TROPICAL FISH® and ECOSAVR™ and, therefore, constitutes a violation of the Lanham Act based on the substantial similarities in design, graphic, text, and concept. The remedies available under the Lanham Act are substantial and include:

> "*... [the recovery] instead of actual damages and profits under subsection (a) an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution for goods or services in the amount of – (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as a court considers just; or (2) if the court find that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.*" 15 U.S.C. §1117(c).

FSI vigorously enforces its intellectual property rights. For these reasons, to the extent that you are involved in the use, offer for sale, sale, distribution, marketing and/or advertising of LIQUID SOLAR BLANKET, we demand that you (1) immediately cease and desist from doing so; (2) refrain from further importing and reselling this product, and inform reseller of its unavailability; (3) recall this product from your numerous points of distribution; and (4) destroy

Island Swimming Sales, Inc.
d/b/a Island Recreational
Mr. Jonathan Bonelli
August 12, 2005
Page 3

all residual stock of this product. We wish to be given the proper assurances that you have complied with these formalities. In addition, we request that you immediately provide us with any and all information you have regarding the manufacturer, the distributor, any importer, or reseller of these products so we can contact U.S. customs and prevent further shipments of these goods from entering the United States.

Very truly yours,

SWANSON MARTIN & BELL, LLP

Alain Villeneuve
Patent & Trademark Attorney No. L215

AV/rh
Enclosure

cc:     Jeffrey D. Corso
        Dan O'Brien

US006065690A

# United States Patent [19]

## O'Brien

| [11] | **Patent Number:** | **6,065,690** |
| --- | --- | --- |
| [45] | **Date of Patent:** | **May 23, 2000** |

[54] **TENSION ACTUATED SUBMERGED LIQUID DISPENSER**

[76] Inventor: **Daniel O'Brien**, 2614 Queenswood Drive, Victoria, BC, Canada, V8N 1X5

[21] Appl. No.: 09/192,297

[22] Filed: **Nov. 17, 1998**

**Related U.S. Application Data**

[60] Provisional application No. 60/066,410, Nov. 24, 1997.

[51] Int. Cl.⁷ .................................................. B01D 17/00
[52] U.S. Cl. ...................... 239/328; 210/198.1; 422/265
[58] Field of Search ............................... 239/34, 37, 38, 239/39, 328; 210/198.1, 242.1; 422/265, 277

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| 1,831,476 | 11/1931 | Bennett . | |
| 2,934,409 | 4/1960 | Biehl .................................. | 210/242.1 |
| 3,273,957 | 9/1966 | Berodjick . | |
| 3,425,791 | 2/1969 | Koberg . | |
| 3,760,805 | 9/1973 | Higuchi .............................. | 128/127 |
| 4,300,558 | 11/1981 | Eckenhoff et al. .................. | 128/260 |
| 4,880,547 | 11/1989 | Biani ................................. | 210/728 |

| 5,064,624 | 11/1991 | King ................................... | 422/264 |
| 5,298,248 | 3/1994 | Hugues et al. ....................... | 424/400 |
| 5,324,428 | 6/1994 | Flaherty .............................. | 210/232 |

*Primary Examiner*—Andres Kashnikow
*Assistant Examiner*—Jorge Bocanegra

[57] **ABSTRACT**

A tension-actuated submerged dispenser for discharging a liquid of one composition into liquid surroundings constituted by a liquid of a different constitution is useful for unattended employment to maintain a certain quality of composition in the surroundings. On the other hand, the quality of composition of liquid in the dispenser can be jeopardized if liquid from outside the container is allowed in, as has been the case with some earlier known submerged dispensers which employed a displacement liquid. In order to develop the necessary pressure to express a liquid through an orifice in a submerged container into which no such displacement liquid is allowed entry, a system of actuating a reduction of enclosed volume by means of tensing a container between opposed end-effectors has been developed. The source of pulling force can be either an externally attached weight or float, or a dispensed liquid which is differentiated as to specific gravity from that of the liquid surroundings.

**9 Claims, 2 Drawing Sheets**



**U.S. Patent**          May 23, 2000          Sheet 1 of 2          **6,065,690**



Fig. 1a



Fig. 1b



Fig 2a



Fig 2b

**U.S. Patent**     May 23, 2000     Sheet 2 of 2     **6,065,690**



Fig 3a



Fig 4a



Fig 3b



Fig 4b



Fig 3c



Fig 4c

6,065,690

1

# TENSION ACTUATED SUBMERGED LIQUID DISPENSER

## CROSS-REFERENCE TO PROVISIONAL APPLICATION

The subject-matter of this invention is substantially as described in the same inventor's U.S. Provisional Application for U.S. patent No. 60/066,410, filing date: Nov. 24, 1997, entitled SUBMERGED DISPENSER FOR LOW-RATE DOSING OF A POOL, the disclosure content of which is herein incorporated by reference.

## BACKGROUND OF THE INVENTION

In general, the invention relates to a mechanically deformable container type dispenser for submerged discharge of a quantity of liquid from the dispenser into liquid surroundings. More particularly, the dispenser is a type wherein the wall structure of an orificed container is comprised by a flaccid membrane, with which opposed end effectors at the ends thereof are combined in a manner whereby said end effectors constitute means for applying tension to the wall structure in order to actuate dispenser operation.

All embodiments of the invention are capable of operation unattended at a submerged site in a surrounding liquid of a first composition, releasing thereinto—at a low rate of discharge—a liquid of a second composition.

To clarify by example what is meant by 'low rate', an approximately palm-sized unit embodying the invention has been used to discharge two hundred and fifty (250) milliliters of liquid over a period of about five hundred (500) hours—nearly three weeks—thus averaging a discharge of only about 0.5 milliliters per hour. After opening a previously closed orifice in this small unit, the user simply allows the unit, which is appropriately weighted, to sink into the liquid body which will receive the 'dose' of liquid automatically discharged from such a pre-filled packet-like product.

There are numerous purposes to which embodiments of the invention may be applied with advantage, in preference to a considerable diversity of known types of dispensers which also possess utility for unattended submerged discharge of a liquid at a low rate. Some devices for submerged dispensing are known wherein the liquid specifically to be discharged is displaced from a container by allowing a different liquid thereinto, drawn either from the surroundings or from a separate container elevated higher than the immediate liquid surroundings of the dispenser container, in order to develop an excess of hydrostatic pressure. Such approaches are limited to a somewhat narrow range of applications, however, because pre-discharge admixture of some displacement liquids and some dispensed liquids is highly unfavourable to maintaining constant compositional qualities of the latter, for the comparatively long period of time entailed by a low discharge rate. Furthermore, in view that the dispenser containers for carrying out such approches are typically rigidly constructed, ie. with rigid wall structure, such dispensers occupy as much submerged volume after discharging their contents as before, and this can be undesirable when unobstructed space within the liquid surroundings is at a premium.

The invention is excellently suited to replenishment or preservation of a chemical constituent which is intended to be maintained at a certain concentration in a liquid body that may be subjected to some foreseeable type of depletion process. Depletion processes which the invention is useful to counteract may include any of the following: evaporative loss of volatile constituents; alteration of constituents due to

2

chemical reaction; precipitative deposition of solutes; nutritive consumption of constituents by biological organisms; and removal by mechanical means of constituents which adhere to surfaces of articles dipped into and retracted from a liquid body.

Although the genesis of the invention in its earliest embodiments was in the context of swimming pool treatment means to assure a desired quality of pool water, and to reduce swimming pool operating costs, it should be noted that most if not all of the foregoing depletion processes may in many instances be normally incurred in settings of use wherein a particularly constituted and/or treated liquid body is employed for productive purposes in such fields of enterprise as the following: chemical processing in general; liquid waste treatment; biotechnology (including fermentation of beverages and culture of anti-biotic medicines); aquaria; mariculture; agriculture (including paddy cultivation, and hydroponics); floriculture; decorative garden ponds; animal husbandry; and textile processing (dip dyeing).

Swimming pool and therapeutic spa treatments employing the invention have to date been more thoroughly investigated from a marketing standpoint, but any one or more of the foregoing diverse types of enterprises may well ultimately consume a larger number of tension-actuated submerged dispensers constructed in accordance with the invention. For example, needed nutritional supplements for cattle and hogs are very conveniently provided by means of tension-actuated dispensers submerged in drinking troughs or in-the-ground livestock drinking reservoirs ('waterholes'), and it seems reasonable to suppose that the number of such troughs and waterholes, on a worldwide basis, far exceeds the total number of swimming pools and spas.

## SUMMARY OF THE INVENTION

General objects like economical manufacturing and convenience of use are as desirable in the case of this invention as with any well-designed new article intended for commerce, but apparatus reliability is an object of special pertinence with respect to the present invention, inasmuch as (a.) without requiring control means remote from the liquid surroundings, a submerged liquid-dispensing apparatus really is not as accessible for making post-installation adjustments, as an unsubmerged apparatus would be; (b.) a low rate of discharge over an extended period of time naturally entails more time during which a variety of events in the surroundings could conceivably interfere with dispenser functioning; and, (c.), more generally, because the appeal of this type dispenser to users so largely depends on its being simply droppable into the operational environment with worry-free assurance it will perform its intended function unattended.

A second object of special pertinence is versatility of application. In view of the diversity of liquids which are usefully discharged into liquid surroundings, as suggested above in connection with identifying typical purposes to which the invention is suited, it is especially desirable to specify dispenser actuation means in such a way as to accomodate discharged liquids having specific gravities either above, below, or the same, as that of any surrounding liquid which is to receive the discharged liquid in a given case.

The sought-for qualities of reliability and versatility have been found to be best procured by employing a flaccid membrane for the wall structure of an orificed, shape-

6,065,690

3

deformable, submerged container having end-effectors at opposite ends thereof, such that said end-effectors constitute means for applying tension to the wall structure, stressing it in order to actuate dispenser operation by causing the container wall to progressively flatten against a quantity of liquid in the container which slowly diminishes as a stream of the discharged liquid escapes through a suitably sized orifice in the container. A float is particularly effective as a upwardly pulling end-effector, whereas a weight is particularly effective as a downwardly pulling end-effector. Depending on the specific gravity of the liquid to be discharged, relative to that of the surrounding liquid, there may simply be a use of contained liquid itself to serve as an end-effector, in view of the buoyancy or alternatively weight thereof. In some cases fixturing means or a frame can supply a tensioning point which is pulled against.

In the interest of greater clarity with regard to the versatility that is attainable in accordance with the invention, it seems apropos here to recall that in the incorporated-by-reference related application (ie. the provisional application), FIGS. 3a–3c depicted an embodiment specifically for dispensing a liquid of lesser density than the surroundings, therefore requiring only a lowermost end-effector comprising a weight. To enable a similar embodiment to dispense a liquid of greater density than the surroundings, it is evident that an uppermost end-effector comprising a float could be added opposite the weight. That a float as uppermost end-effector has been contemplated and disclosed in the provisional application is shown by reference to FIG. 2b therein. Similarly, in order to enable an embodiment like the one shown in FIGS. 4a–4c of the provisional application to dispense a liquid of lesser density than the surroundings, a lowermost end-effector comprising a weight could be added. That use of a weight as an end-effector has been contemplated and disclosed in the provisional application is shown by reference to FIGS. 3a–3c therein. Again similarly, to the embodiments depicted in FIG. 1a and FIG. 2a of the provisional application, a float as an uppermost end-effector could be added, and to the embodiments depicted in FIG. 1b and FIG. 2b of the provisional application, a lowermost end-effector comprising a weight could be added. It is readily apparent also that opposed pairs of uppermost and lowermost end-effectors attached to a tension-actuated, shape-deformable, submerged container will provide a capability for dispensing a liquid irrespective of its relative density with regard to the surroundings.

Bearing these matters of clarification (without introducing any new subject-matter) in mind, it is seen that the invention is indeed versatile.

Tension by means of pulling forces applied from the ends of a deformable container, and the fact that the container has a suitably sized orifice in it for escape of a stream of the contents as the container tends to be flattened, provide a highly reliable principle of operation.

Details of structures and arrangement, plus recommended manners of manufacturing submerged dispensers embodying the invention, and suggestions how to deploy such dispensers to convenient advantage, are addressed below with reference to the figures of drawing next identified.

## BRIEF DESCRIPTION OF DRAWINGS

FIG. 1a illustrates an embodiment wherein the opposed end-effectors are a suction cup-type fixture and a float.

FIG. 1b illustrates an embodiment wherein the opposed end-effectors are a suction cup-type fixture and a weight.

4

FIG. 2a shows an embodiment wherein the opposed end-effectors are a float and an embedded stake.

FIG. 2b shows an embodiment wherein the opposed end-effectors are a weight and a floating stake.

FIGS. 3a–3c illustrate an embodiment at three intervals in the process of tensed container wall structure being flattened between float and weight end-effectors.

FIGS. 4a–4c illustrate an embodiment at three intervals in the process of tensed container wall structure being flattened between weight and frame type end-effectors.

## DETAILED DESCRIPTION OF THE INVENTION

With reference to FIG. 1a, float 8 is an uppermost end-effector which pulls upwardly on deformable container 10 against the opposed resistance provided by fixturing means 14 secured to the glass wall of an aquarium tank by suction cup 21. The result of such pulling is to strain the wall membrane of container 10, tending to flatten the container and thereby pressurizing the container content 16, thus forcing a continuous thin stream of liquid (or suspension) 16 out into surrounding liquid 18 through orifice 12. If liquid 16 in this instance is assumed to be of lesser density than liquid 18, then the float 8 could be omitted, for the buoyancy of the content itself of container 16 would then serve functionally as an upwardly pulling end-effector.

With reference to FIG. 1b, weight 9 is a lowermost end-effector which pulls downwardly on deformable container 10 against the opposed resistance provided (again) by fixturing means 14 secured to the glass wall of an aquarium tank by suction cup 21. The result of such pulling is the same as in the previous figure, but here, if liquid 16 in this instance is assumed to be of greater density than liquid 18, then weight 9 could be omitted, for the weight differential of the dispensed liquid 16 would then make it serve as a downwardly pulling end-effector.

The invention, however, would not, if the free end-effectors shown in FIGS. 1a and 1b, respectively were omitted, discharge a liquid of specific density exactly equal to that of the liquid surrounding. It is easy to see that in such a case either version, as shown, would suffice. These two versions, incidentally, are easily provided as a single commercial product, by simply making the weight and the float detachable and interchangeable, and of course optional in both cases, in view that a given fishtank liquid treatment chemical may in fact be heavy enough or light enough that the container will discharge its contents (after filling, say by means of a syringe), without an externally mounted free end-effector at all, since the dispenser content would then amount to an internally provided source of container-tensing power. A further point to note is that the rate of discharge of a liquid that can be discharged without a weight or float can be modified by using one or the other: a weight in conjunction with a heavy dispensed liquid will cause a faster discharge, and a float with a lighter liquid will do so also.

With reference next to FIGS. 2a and 2b, the principle of operation and essential interrelation of elements are the same as in the first example. Here the environment of use is a natural pond, into the earthen bottom of which a fixturing means 14 comprising a wooden stake can be embedded as shown in FIG. 2a, in which case a float type end-effector 8 is again appropriately used when the liquid to be discharged is not sufficiently differentiated by a lower density from that of the surroundings, to obtain the desired discharge. In FIG. 2b, on the other hand, a weight 9 is shown working in opposition to the buoyant force provided by a wooden stake

6,065,690

5

in a non-embedded orientation. Such a variant would be easier to check on and retrieve, if that were desired. Again, exactly as above and for the same reasons, the float 8 and the weight 9 are optional, unless that is, a liquid of the same density as the surrounding liquid is to be dispensed. Sans float, an apparatus as in FIG. 2a would be excellent for releasing a low density film-forming chemical so as to coat the surface of a reservoir in order to prevent excessive evaporative loss therefrom of water. The dispensed liquid from the apparatus as shown in FIG. 2b, but sans the weight, alternatively could be a heavy bromine compound for disinfecting a contaminated reservoir or pond.

While the first two sets of figures illustrating embodiments of the invention above featured overall structures which, with the exception of alternative liquid contents, are the same both for upwardly and downwardly directed flows of discharging contents, although the structures are in the appropriate cases inverted and slightly differently sited, the following third and fourth examples are provided in contemplation that it is nothing unusual to supply dispensers equipped with installation means suited to just one particular intended direction of flow.

With reference to FIGS. 3a–3c depicting the same embodiment at three intervals in time, as container 10 progressively flattens, the site-holding function is by means of the weight 9. Orifice 12 is built into the top of container 10, above which, preferably, an optional float 8 is detachably secured by attachment means whereby the upwardly pulling force of the float contributes to tensing the membraneous container wall. As already noted above, a dispensed liquid of lower density relative to that of the surroundings will by itself produce a buoyancy force and will interiorly push upwardly against the top of the container, in that manner tensing its wall structure, and the purpose of the float therefore is merely to increase the available net upwardly pulling container-tensing force. In order to prevent either kind of source of buoyancy from raising the whole dispenser to the surface of the liquid surroundings, of course, the mass provided by weight 9 must be appropriately proportioned—taking into consideration both the buoyancy of a float 8 and the relative density of the dispensed liquid.

Pertaining next to the embodiment of the invention shown in FIGS. 4a–c, wherein container 10, assumably filled with a dispensable liquid of higher specific gravity than that of surrounding liquid, hangs suspended from the site-holding fixturing means comprised by legged frame 14. The point of attachment of the container with this frame is the tensioning point pulled upon by membraneous wall structure of the container, by means of weight 9.

Any dispensably flowable substance which may be both heavy and somewhat viscous, the definition of "liquid" herein encompassing even syrupy and pasty compounds, such as a crack-sealing compound or glue, can be steadily discharged from an embodiment of this last exemplified type. Again, as in above cases, a free end-effector, whether a float or (as here) a weight, is best regarded as an option which is useful when development of a larger force tending to flatten the container by expressing the content therefrom is needed.

It will be readily understood by now that every embodiment of the disclosed invention operates in accordance with the same actuation concept as in the case of other embodiments, namely: that the volume of a flaccid container initially filled with a liquid to be dispensed will diminish as the membraneous container wall is tensed between opposed tensioning points, at least one of which must be associated

6

with structure which is free to move in a direction away from the opposite point. The illustrated example of an embodiment with both a float and a weight, where the weight is well away from the bottom of the use surroundings, as shown in FIG. 2b, functions no differently with respect to the foregoing concept of actuation than any other version of the invention, say for example: the embodiment shown in FIGS. 3a–c.

Issues regarding certain constructional features will next be addressed, emphasizing particularly a distinction between essential and non-essential features pertaining to the various physical elements of any embodiment of the invention.

An orifice in the container is essential to dispensing, not only in the immediately obvious sense applicable to all containers of fluids whatever their nature, if the content is to be removed, but also in the sense that escape of liquid permits tensioning of container wall structure to change the shape of the container, and to cause its ever-diminishing volumetric capacity. One may contrast this circumstance to a similar flaccid-walled container holding a gas instead of a liquid, such as a weather balloon, in which case no orifice would be required in order to reduce the volume actually occupied by the gas, since gases are compressible, whereas with a liquid-filled, closed, flaccid-walled container having a tensioned wall, the shape thereof and volume of content will remain substantially constant irrespective of the magnitude of tension force. Thus it is the cooperation of an orifice allowing the liquid content to escape, and of a tensioned container wall structure, not the tensioning by itself, which in the invention make the process of pressurization of the content synchronous with reduction of the volume of contained liquid.

Relatedly it follows that it is not orifice size by itself which limits the rate of discharge of the content from any embodiment of the invention, such rate being a function of the proportioning of both orifice size and of amount of tension applied to the membraneous wall of the container. To make the point clear, it is possible to have a larger orifice and a lesser tension force operative in combination to produce a lower rate of discharge than produced by a somewhat smaller orifice and a greater tension force. For practical reasons, such as potential entry into a comparatively large orifice of fast-moving foreign material, especially when pressurization may be fairly low and unreliable to keep particles having significant momentum out, it is generally preferable to employ a smaller rather than a larger orifice, thus necessitating attention to means for increasing tensioning force.

Orifice location is another matter, not pertaining essentially to device actuation. Having the orifice built into the top of a container discharging a buoyant liquid content takes advantage of the tendency of the liquid to move upwardly and so can contribute to effective discharge, and similarly, the tendency of a liquid content which is heavier than the liquid of the surroundings to sag within a flaccid container can also be taken advantage of by an underside location of the orifice. These choices are appropriately preferred when it is desired to direct the discharge toward a certain area thus receiving it more promptly; however, location of the orifice is not normally essential to discharge occurring per se, since the tensioning of the container does not depend on orifice location, which might in fact be anywhere on the container, providing the requirement to completely void the container can be met. Progressive flattening of some embodiments of the invention, when dispensing liquids which tend to rise or sag to one end because of differentiation of specific gravity from the surroundings, could in some cases unevenly close

6,065,690

7

the sides of a container progressively together, more toward one end than toward the other, as discharge proceeds, and therefore one does need to avoid any prospect of a side flattening against the interior of an orifice in a manner sealing it closed and thus perhaps trapping an undischarged quantity of contained liquid above or below a side-located orifice. This would not be a problem likely to occur in the case of dispensing a liquid of the same density as liquid of the surroundings, or with an embodiment having both upper and lower ends free to move, as when a container is tensed between a float and a weight as in FIG. 2b. The distribution of tension in such a case is more ideally from both ends pulling against one another, as distinct from embodiments wherein one free end-effector pulls against the resistance afforded by an anchored or fixtured type opposite end-effector. Therefore, it will be understood that an embodiment such as that shown in FIG. 2b, especially if used to dispense a liquid which does not tend to rise or sag within the container, lends itself to easier provision of a side-located orifice (not shown) instead of at an end of the container. Interestingly, the embodiment shown in FIGS. 3a–c, if it were used with a dispensed liquid heavier than the liquid of the surrounding, as conceivably it could be, could be feasibly equipped with a side-located orifice (not shown), and assurance against the sealing closed of the orifice by uneven container flattening could be gained by providing little enough of extra weight in the optional weight shown attached to the bottom of the container, so that the reduction of net weight of the submerged device due to discharge would at an appropriate moment cause it to rise from contact with the bottom or floor of the liquid surroundings. Similarly, a careful scaling of relative proportions of buoyancy in the float and weight of dispensable liquid could provide a device not needing an attached weight, which would act in the same way, rising as container content is discharged (not shown). Such and other non-illustrated variants can be developed within the scope of the invention with ease, once its principles are grasped as herein taught.

Essential to effective practice of the invention is understanding of the character of container shape-deformation and of the provision of a membrane type wall structure for the container. The material of the membrane has been described throughout the above discourse using the term 'flaccid', and for greater clarity it is now stated that this means that the material has a low bending modulus in thin construction but simultaneously is of high tensile strength and low elongation. Generally, a sheet of flaccid material as herein understood is easily folded, creased, or crumpled, by application of small magnitude forces, but is not easily stretched to dimensions much greater than as fabricated. The actuation concept of tensing the container to discharge its content through an orifice at a substantially steady and preferably slow rate would not be well served by use of rubber or similar material of high elongation with elastic recovery of changed dimensions. Such material would not be desirable for the type of submerged discharge contemplated, due to the highly progressive weakening of force causing the discharge in such a pre-expanded rubber bladder case, which would make it inherently impossible to obtain a fairly steady discharge over a long duration of time, unless simultaneously there were some means for changing the orifice size, say by enlarging it as available force diminishes, which is a highly undesirable complication of apparatus. The easy way to distinguish a variable-volume container made of high elongation wall material, on the one hand, and a variable-volume container made of low elongation wall material (as with the invention), on the other hand, is to note that the

8

surface area of the wall structure is substantially unchanged in the latter case. That a continuous surface of a given constant area may enclose different volumes depending on the shapes to which the surface is contoured, closed upon itself, or in other words 'bent', is of course well established. The nature of deformation of the shape of a container constructed of thin low elongation material involves a change of surficial contouring which is quite different from dimensial stretching of high elongation rubbery sheet material.

Typical materials which are well suited for use in fabricating the container element of any embodiment of the invention include polyvinyl chloride and polypropylene films. These and similar polymeric films are sufficiently liquid-impermeable and mechanically sound, and are easily cut into shaped gores which are sealable at the edges thereof to form excellent containers, the minimum number of gores needed being two. To fabricate a container, alternatively, the same polymeric substances may be blown as tubular film, or may be rotationally molded, and in all cases it is not difficult to form suitable orifices built into the container using wellknown techniques.

With regard to an optional detachable float and/or weight, such may be separately fabricated from the container and then attached to it by known means. In the case of a weight, a convenient option not illustrated in the figures is to emplace a strip of metal in a partly fabricated container before sealing its edges all around the gores comprising it. Also, it is readily understood that a built-in rather than attached float would simply be a matter of providing sufficient excess container material to seal about a pocketlike area permanently containing air.

At the point of manufacturing of products which constitute pre-filled dispensers, for supply to purchasers with the desired dispensable liquid already in each product unit, the liquid can be easily introduced to the container element by means of pumping through tubes or hollow needles momentarily inserted into apertures in container wall portions or edges which are subsequently sealed. Such apertures may or not be the discharge orifices themselves.

It has been suggested already in the SUMMARY above that use of the invention should normally involve no more imposition upon the user other than that pre-use orifice closure means be removed, followed immediately by placing the dispenser into the liquid surroundings where it typically will function unattended with great reliability for the length of time for which it is designed to discharge its content. One method of opening an orifice which is convenient to users is to cut across a marked line on the container, such cutting to remove the sealed portion of container wall edge structure adjacent a built-in channel comprising the orifice.

When the palm-sized packet-like product mentioned in the BACKGROUND is finally devoid of its content, it is flat and takes up little space, thus a large number of such units used successively over a long period of time can be allowed to accumulate at the bottom of a pool, if desired, before someday collecting them for recycling (also facilitated by the flatness).

What is claimed is:
1. A tension-actuated submerged dispenser comprising
   (a.) an orificed container having a shape-deformable wall structure consisting of low bending modulus and high tensile strength membraneous material, and
   (b.) a pair of opposed end-effectors at opposite ends of said dispenser, arranging said end-effectors vertically

6,065,690

9

with respect to one another so that one of said end-effectors is a top end-effector and the other is a bottom end-effector,

and wherein a tension is applied to said wall structure of said container by means of a pulling force developed between the said end-effectors, said pulling force being developed by providing that at least one of said end-effectors is both free to move and is made to execute movement in an opposite direction from the other end-effector, causing said movement by providing that the moving end-effector is of a specific gravity differentiated from that of a surrounding liquid environment of use of said dispenser.

2. A tension-actuated submerged dispenser as in claim 1, wherein the said top end-effector is a float.

3. A tension-actuated submerged dispenser as in claim 1, wherein the said bottom end-effector is a weight.

4. A tension-actuated submerged dispenser as in claim 1, wherein the said top end-effector is a float, the said bottom end-effector is a weight, and wherein both end-effectors are free to move.

5. A tension-actuated submerged dispenser as in claim 1, wherein the said top end-effector is a float, the said bottom end-effector is a weight, and wherein only said float is free to move.

6. A tension-actuated submerged dispenser as in claim 1, wherein the said top end-effector is constituted by an upward

10

pushing charge of liquid within said container, said liquid being of lesser specific gravity than liquid constituting said surrounding liquid environment of use.

7. A tension-actuated submerged dispenser as in claim 1, wherein the said bottom end-effector is constituted by a downward pushing charge of liquid within said container, said liquid being of greater specific gravity than liquid constituting said surrounding liquid environment of use.

8. A tension-actuated submerged dispenser as in claim 6, wherein the said top end-effector is constituted by an upwardly pushing charge of liquid within said container, said liquid being of lesser specific gravity than liquid constituting said surrounding liquid environment of use, and wherein said bottom end-effector is constituted by attachment means anchoring said dispenser to a side boundary wall of said surrounding liquid environment of use.

9. A tension-actuated submerged dispenser as in claim 6, wherein the said top end-effector is constituted by an upward pushing charge of liquid within said container, said liquid being of lesser specific gravity than liquid constituting said surrounding liquid environment of use, and wherein said bottom end-effector is constituted by means anchoring said dispenser to a bottom portion of boundaries of said surrounding liquid environment of use.

* * * * *